IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER J. JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 08-243 Erie |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

      Plaintiff, Lester J. Jordan, ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.* Plaintiff filed applications for DIB and SSI on August 23, 2004, alleging disability since July 13, 2003 due to a heart condition, allergies, arthritis and mental health issues (Administrative Record, hereinafter "AR", 19; 67-68). His applications were denied and he requested a hearing before an administrative law judge ("ALJ") (AR 36-40; 43; 380-384). A hearing was held before an administrative law judge ("ALJ") on August 23, 2007 (AR 389-421). Following this hearing, the ALJ found that Plaintiff was not entitled to a period of disability, DIB or SSI under the Act (AR 19-27). His request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, I will deny the Plaintiff's motion and grant the Defendant's motion.

**I. BACKGROUND**

      Plaintiff was born on August 22, 1949 and was 58 years old at the time of the ALJ's decision (AR 395). He is a college graduate with a degree in Human Relations (AR 399). His last position held was as an employment counselor with Northern Tier Community Action

Corporation until he was laid off for lack of work on July 14, 2003 (AR 136).

Plaintiff bases his disability claim, in part, on alleged heart problems. Historically, the Plaintiff underwent coronary bypass graft surgery on March 26, 1998, performed by Richard Petrella, M.D. (AR 144-165). Dr. Petrella noted that post surgery he had "done well" and when seen for follow-up on May 21, 1998, Plaintiff had no complaints (AR 166). Physical examination revealed that his heart rhythm was regular, his lungs were clear and his incisions were well healed (AR 166). Dr. Petrella released the Plaintiff to full activity (AR 166). Following his bypass surgery, Plaintiff reported feeling "quite well" (AR 169).

A routine stress test conducted on March 12, 1999 was reported as normal (AR 234). Plaintiff had a fifty percent left ventricular ejection fraction and there was no evidence of wall motion abnormality (AR 233).

A chest x-ray conducted November 26, 2003 showed post operative changes after cardiac surgery, but the heart was not enlarged and there was no failure noted (AR 212). The mediastinum, pleural surfaces and bony structures were unremarkable (AR 212).

On January 20, 2004, the Plaintiff was admitted to the hospital for complaints of chest, arm and back discomfort (AR 169). Chest x-rays showed an enlarged heart and post operative changes, but there was no failure (AR 211). Dr. Petrella concluded on the basis of a cardiac catherterization that all of his bypass grafts were patent (AR 167; 173-175). He was diagnosed with acute non-Q-wave myocardial infarction, native vessel coronary disease, mild LV dysfunction, hyperlipidemia and GERD (AR 167). Because the etiology of the infarction was not clear, Dr. Petrella recommended that the Plaintiff be treated medically (AR 167). Dr. Petrella enlisted the help of social services to assist the Plaintiff with the cost of his medications (AR 172).

Kamran Saleh, M.D., the Plaintiff's primary care physician, completed a Pennsylvania Department of Public Welfare Employability Assessment form on January 27, 2004 (AR 181-182). Dr. Saleh opined that the Plaintiff was temporarily disabled from January 20, 2004 until January 20, 2005 due to chronic heart problems and high cholesterol (AR 181-182).

When seen by Dr. Saleh in February 2004 and May 2004, treatment records show that the Plaintiff had no complaints (AR 178-179). On September 10, 2004 Plaintiff complained of

arthritic pain and decreased energy (AR 177).

A stress test conducted on September 22, 2004 was reported as normal (AR 339). While the Plaintiff complained of some shortness of breath there was no arrhythmias, EKG changes, or chest pain noted (AR 339). There was no evidence of exercise induced ischemia (AR 339). The nuclear portion of the stress was reported as normal with an ejection fraction of forty-eight percent with poor septal motion (AR 339). A myocardial scan conducted that same date also showed poor septal wall motion but was otherwise "unremarkable" (AR 340).

Plaintiff was examined by Dilbagh Singh, M.D., a consulting examiner, on November 12, 2004 (AR 235-238). Plaintiff relayed a history of heart attacks and quadruple bypass surgery (AR 235). He reported that he lost his job and was unable to take his medications as prescribed for approximately six months which led to his heart attack in 2004 (AR 235). On physical examination, Dr. Singh noted that the Plaintiff was alert and oriented and did not complain of any chest pain or radiation (AR 236). He reported that Plaintiff's heart sounds were normal with no gallop or murmur noted (AR 236). There was no edema or calf tenderness in his extremities, with minimal ankle and leg edema noted (AR 236). His gait and station were normal and his range of motion was grossly normal (AR 238). Plaintiff was neurologically intact and stable (AR 236). Dr. Singh noted that his mood, behavior, memory, orientation, concentration and hygiene were normal, and he was able to communicate clearly, relate to office staff and follow directions (AR 238). Dr. Singh assessed the Plaintiff with a history of coronary artery disease, obesity and arthralgia per the Plaintiff's statements (AR 236).

On November 30, 2004, a state agency reviewing physician[1] completed a Physical Residual Functional Capacity Assessment form and concluded that the Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an 8-hour workday; sit for six hours in an 8-hour workday; was unlimited in his ability to push and/or pull; and had some postural and environmental limitations (AR 240-241; 243). The state agency reviewing physician opined that Plaintiff could drive a car, lift ten pounds, climb ten steps, perform some activities of daily living and walk unassisted (AR 244).

An echocardiographic report dated November 3, 2005 showed normal left ventricular

---

[1]The state agency reviewing physician's signature is illegible.

ejection fraction of sixty-five percent, impaired left ventricular diastolic function, moderate concentric left ventricular hypertrophy, mild right ventricular dilatation, mild right and left atrial dilatation and no significant valvular pathology (AR 336). An echocardiographic report dated January 25, 2007 showed normal left ventricular ejection of fifty-five percent (AR 330). All other findings remained unchanged from the November 2005 study (AR 330).

In addition to his heart condition, Plaintiff also alleges disability due to neck, back and lower extremity pain. He complained of arthritic pain and decreased energy on September 10, 2004 (AR 329). When seen by Dr. Saleh in October and November of 2005, and March and September 2006, Plaintiff complained of muscle aches, fatigue and a "burning" sensation in his lower extremities (AR 280-281; 324-325).

A number of diagnostic studies were conducted with respect to the Plaintiff's complaints of pain. A lower extremity arterial report dated November 10, 2005 was reported as normal with no evidence of significant stenosis (AR 335). An x-ray of the Plaintiff's lumbar spine taken on March 9, 2006 revealed no evidence of fracture, with no dislocation or bony destructive process noted (AR 334). An MRI of the Plaintiff's cervical spine conducted on September 13, 2006 revealed mild scoliosis and some disc protrusion at C3-4, C4-5, C5-6 and C6-7 (AR 333). On September 25, 2006, an MRI of the Plaintiff's thoracic spine showed old anterior compression fractures at T7, T8 and T9, with slight bulging at the T6-7 and T7-8 discs, and degeneration of T6-through T10 discs (AR 332).

On May 9, 2007 Plaintiff returned to Dr. Saleh and reported that he had "blacked out" approximately three weeks prior (AR 278).

With respect to any alleged mental impairment, the record reflects that a state agency reviewing psychologist[2] concluded on December 16, 2004 that the Plaintiff had no medically determinable impairment (AR 247-260).

Plaintiff testified at the administrative hearing that he lived alone in an apartment (AR 395). He did not own a car but had a valid driver's license (AR 396-397). He stated that driving caused him discomfort so he stopped driving approximately one and one-half years prior to the

---

[2]The state agency reviewing psychologist's signature, as well as the stamped name, is also illegible.

hearing (AR 419).  Plaintiff indicated that he had previously worked as a guidance employment counselor from 1997 until he was laid off in 2003 (AR 398).  He collected unemployment insurance for approximately six months while looking for similar type work (AR 399).  As a result, he stated that he stopped taking his blood pressure medication and suffered a heart attack (AR 399).

Plaintiff claimed he was unable to work due to complications from five previous heart attacks (AR 400).  He indicated that he suffered from pain in his arms and legs, chronic tiredness and had limitations on lifting weight or engaging in strenuous activity (AR 401).  He claimed he also had a "leaky valve" in his heart (AR 404).  Plaintiff testified that he had occasional chest pain resulting from exertion, changes in the weather or when he became tense, which he alleviated with rest and Tylenol (AR 401-402).  He indicated that he took no heart medication, only blood pressure medication (AR 403).  Plaintiff admitted that his doctor recommended a walking program for cardiac rehabilitation but claimed he was unable to keep up with it because of leg pain and fatigue (AR 404-405).  He indicated that he felt constantly tired, was unable to sleep at night due to pain and napped at least two times per day (AR 406).  Plaintiff also testified that his doctor advised him to lose weight but he was unable to do so (AR 395).

Plaintiff further claimed he was unable to work due to nerve damage affecting his arms and legs from compression fractures in the back of his neck and a distended vertebra in the bottom of his back (AR 406).  He stated that he experienced constant tingling in his hands and fingers causing a loss of dexterity when he tried to hold things, and numbness kept him awake at night (AR 408; 415).  Plaintiff acknowledged, however, that an EMG conducted in November 2006 "showed nothing" and he only took Tylenol as needed (AR 407).  Plaintiff testified that he had not been referred to physical therapy and did not utilize any assistive devices (AR 407-408).  He suffered from weekly neck pain which caused postural difficulties and affected his ability to read (AR 416-417).  Plaintiff claimed he also suffered from acid reflux, diabetes and diverticulitis, but was not on medication for these conditions (AR 408-410).  Plaintiff indicated that he took antidepressants in the past for stress but was not currently on medication for any mental health impairment (AR 410).

In response to a question as to how he spent his time, the Plaintiff responded "I just kind

of think a lot" ... "[g]aze" and "watch TV" (AR 410).  He was able to prepare meals in the microwave, wash dishes, do his own laundry, grocery shop, dress and bath himself and keep track of his medications and appointments (AR 413-414).  He stated he had a difficult time walking because of arm and leg aches, numbness in his thigh radiating down to his knee, balance problems and weakness (AR 416).  Plaintiff further stated he had difficulty sitting for extended periods due to stiffness, pain and numbness, and could only sit for about ten minutes before needing to stand (AR 418).  He claimed he was able to stand for only fifteen to twenty minutes before experiencing pain (AR 418).  Plaintiff testified that he was only able to walk for one-quarter of a mile at a very slow pace before he became tired (AR 405; 418).  He indicated he could lift approximately ten pounds but not repeatedly (AR 419).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 19-27).  His request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 5-8).  He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971).  It has been defined as less than a preponderance of evidence but more than a mere scintilla.  *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A).  Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels.  42 U.S.C. § 1382(a).  A

person who does not have insured status under Title II may nevertheless receive benefits under Title XVI.  *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a).  In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c).  The ALJ found that Plaintiff met the disability insured status requirements of the Act through December 31, 2008 (AR 21).  SSI does not have an insured status requirement.

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability.  *Bowen,* 482 U.S. at 141.  If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past.  *Id.*  If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform.  *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

*Jesurum*, 48 F.3d at 117.  The ALJ resolved the Plaintiff's claim at the fourth step.  He concluded that "[t]he claimant has the following severe impairments: cardiac impairment with history of bypass surgery and myocardial infarction events; obesity; mild scoliosis with evidence of broad based cervical disc herniations without evidence of radiculopathy; slight bulging and degeneration of thoracic discs; and high blood pressure fairly well controlled with medication" but determined at step three that he did not meet a listing (AR 21-22).[3]  The ALJ found that the

---

[3]The ALJ further found that the Plaintiff's back pain, tingly hands and arms, diabetes, diverticulitis, acid reflux and depression/stress were non-severe impairments (AR 21).

Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level (AR 22).  Comparing the Plaintiff's RFC with the physical and mental demands of his job as a guidance/employment counselor, the ALJ concluded that he was able to perform his past relevant work (AR 23-24).  The ALJ additionally determined that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible (AR 23-24).  Again, we must affirm this determination unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Plaintiff  claims that the ALJ erred with respect to his evaluation of the opinion of Dr. Saleh, his treating physician.  His argument in substance is that the ALJ failed to give controlling weight to his opinion and/or rejected it on inadequate grounds in violation of the treating physician rule.  A treating source's medical opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(d)(2).  It is well settled in this Circuit that the opinion of a treating physician is entitled to great weight and can only be rejected on the basis of contrary medical evidence. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988).  An ALJ must articulate in writing his or her reasons for rejecting such evidence.  *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). In the absence of such an indication, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id*.  The Third Circuit requires an ALJ to "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  *Schaudeck v. Comm'r of Social Security Admin.*, 181 F.3d 429, 433 (3rd Cir. 1999) (citations omitted).  Here, substantial evidence supports the ALJ's refusal to afford substantial weight to Dr. Saleh's opinion.

As the ALJ noted, following the Plaintiff's myocardial infarction in January 2004, catherization results showed that his bypass grafts were widely patent (AR 24).  Follow up

diagnostic studies documented normal left ventricular ejection fraction with only mildly impaired ventricular diastolic function in November 2005 and normal left ventricular ejection fraction in January 2007 (AR 24). The ALJ observed that the Plaintiff had not undergone medical investigation of his coronary artery disease or been under the care of a specialist, was not involved in any cardiac rehabilitation program after his heart attack and only took over the counter medication for chest wall pain (AR 24). An ALJ may properly rely upon a claimant's treatment regimen, or lack thereof, in determining the appropriate weight to accord a medical opinion. *See e.g., Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 148-49 (3rd Cir. 2007) (rejecting medical opinion supporting disability because it contradicted claimant's moderate treatment regimen).

The ALJ further found that Dr. Saleh's opinion was inconsistent with the findings of Dr. Singh, the consultative examiner (AR 26). Dr. Singh found that Plaintiff's heart sounds were normal with no gallop or murmur noted, there was minimal ankle and leg edema, Plaintiff had grossly normal ranges of motion, normal gait and station, no chest pain, was neurologically intact and his mental status examination was normal (AR 26; 235-238).

The ALJ also found that Dr. Saleh's opinion was inconsistent with the opinion of the state agency reviewing physician, who reviewed the medical evidence of record and concluded that the Plaintiff could perform light work (AR 26; 240-244). Contrary to the Plaintiff's contention, I find that the ALJ was not improperly "selective" in his analysis of the medical record. He considered Dr. Singh's findings on physical examination, as well as the Plaintiff's treatment regimen. It is long-settled that the findings of a non-examining physician may be substantial evidence defeating contrary opinions. *Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (ALJ did not err in rejecting opinion of treating physician in favor of opinions from state agency physicians, where treating physicians' opinions were conclusory and unsupported by the medical evidence); *Mangrum v. Barnhart*, 184 Fed. Appx. 202, 203-04 (3rd Cir. 2006) (ALJ did not err in crediting opinions of state agency physicians over treating physicians where one-page

certifications were conclusory and unsupported by the medical evidence); *Harris v. Astrue*, 2009 WL 2342112 at *7 (E.D.Pa. 2009) (when consistent with the record, ALJ is entitled to rely on state agency physician's opinion even if contradicted by opinions of treating physicians).

Plaintiff further challenges the ALJ's reliance on the opinion of the state agency reviewing physician because this physician did not have the benefit of "the complete record" in formulating his assessment and "SSR 96-6p was not followed in this case." *See* Plaintiff's Brief pp. 12-13. The later medical evidence consisted of the diagnostic studies relative to the Plaintiff's complaints of neck, back and leg pain. Social Security Ruling ("*SSR*") 96-6p states that an ALJ is required to obtain an updated report whenever "additional medical evidence is received that in the opinion of the administrative law judge ... suggest that a judgment of equivalence may be reasonable; or ... may change the State agency medical ... consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *SSR* 96-6p, 1996 WL 374180 at *4. Plaintiff's reliance on this Ruling is misplaced however, as the Plaintiff does not claim that his musculoskeletal impairments are equivalent to any Listing of Impairments creating a presumption of disability. Consequently, the ALJ was not required to seek an updated medical opinion. *See Wilson v. Astrue*, 2009 WL 1598666 at *2 (3rd Cir. 2009) (holding that no updated medical opinion was required where claimant did not claim that her back impairment met a Listing and only claimed that the medical experts did not "have a complete evidentiary record"); *Ellison v. Astrue*, 2009 WL 1269740 at *15 (E.D.Pa. 2009) (ALJ not obligated to seek updated medical opinion when medical equivalency not at issue).

Moreover, although these records were not reviewed by the state agency physician, they were reviewed by the ALJ, who specifically discussed these records in fashioning the Plaintiff's residual functional capacity (AR 25). *Wilson*, 2009 WL 1598666 at *2 (noting that while the medical experts did not consider the later medical evidence "[t]he ALJ properly took this medical evidence into account when making his decision"). The ALJ acknowledged that an MRI of the

Plaintiff's cervical spine in September 2006 showed mild scoliosis with broad based disc protrusions with some impingement on the spinal cord and thoracic spine studies revealed old compression fractures and degeneration with no bulging (AR 25). The ALJ observed, however, that EMG test results were negative, and when he was examined by Dr. Singh, Plaintiff had no specific musculoskeletal complaints, other than he ached all the time (AR 25). Finally, the ALJ noted that the Plaintiff was under no real medical care for any neck or back disorder, despite his claims of nerve damage and considerable neck and back pain for which he only took over the counter medication (AR 25). Therefore, even if the state agency reviewing physician had had the benefit of these later records, they do not support the Plaintiff's contention that he was incapable of performing substantial gainful activity. I therefore find no error in this regard.[4]

Finally, the Plaintiff claims that his receipt of unemployment compensation should not "negate" his claim for disability. *See* Plaintiff's Brief p. 15. As the ALJ observed, the record shows that the Plaintiff was laid off from his job for lack work (AR 136), but he claimed in his disability applications that he stopped working in July 2003 due to a variety of reasons, including his health and conflicts with his supervisor (AR 68). Subsequent to his alleged disability onset date of July 13, 2003, the Plaintiff applied for and collected unemployment compensation while looking for similar work (AR 24). The ALJ found that his receipt of unemployment benefits was inconsistent with any application alleging total disability (AR 24; 26).

It is entirely proper for the ALJ to consider the Plaintiff's receipt of unemployment benefits as being inconsistent with his disability claim during the same time period. *See Myers v. Barnhart*, 57 Fed. Appx. 990, 997 (3rd Cir. 2003), citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th cir. 1997) (holding that application for unemployment compensation benefits can adversely affect a claimant's credibility because of admission of ability to work required for unemployment benefits); *Kerik v. Astrue*, 2008 WL 2914793 at *8 (W.D.Pa. 2008) (ALJ is entitled to point out

---

[4]Parenthetically, I observe that Dr. Saleh, who did have the benefit of these later diagnostic studies, never opined that the Plaintiff was unable to work due to any problems associated with his neck, back or lower extremities.

the inconsistency between receipt of unemployment benefits and an application for disability as it adversely affects credibility).  Moreover, as discussed above, it is clear that the Plaintiff's receipt of unemployment compensation benefits was merely one piece of a much larger evidentiary mosaic upon which the ALJ relied in denying benefits.

### IV. Conclusion

Substantial evidence supports the ALJ's decision that the Plaintiff was not entitled to a period of disability, DIB or SSI under the Act.  Plaintiff's motion for summary judgment will therefore be denied and the Commissioner's motion will be granted.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER J. JORDAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 08-243 Erie |

**ORDER**

AND NOW, this 10th day of September, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 9] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Lester J. Jordan.

The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.